**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0802-25

LAKEVIEW REALTY
INVESTMENT ASSOCIATES, LP,

    Plaintiff-Appellant,

v.

ANWAR SABREE,

    Defendant-Respondent,

and

MARIE MONTEIL-SABREE,

    Defendant.

_____

              Submitted May 28, 2026 – Decided July 29, 2026

              Before Judges Mawla and Marczyk.

              On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. DC-010069-25.

              Giordano Halleran & Ciesla, PC, attorneys for appellant (Steven W. Ward, of counsel and on the briefs).

Anwar Sabree, self-represented respondent.

PER CURIAM

Plaintiff Lakeview Realty Investment Associates, LP appeals from the Special Civil Part's September 30, 2025 judgment against defendant Anwar Sabree in the amount of $3,032.26.[1]  We affirm in part, and reverse and remand in part, for the reasons expressed in this opinion.

## I.

Plaintiff owns an apartment complex.  In June 2024, plaintiff and defendant executed a renewed one-year lease agreement, to begin on July 1, for the unit he had been renting since 2020.  The lease established the rent at $1,533 per month.  If defendant did not pay the rent in full by the fifth day of each month, he was subject to an additional late charge of ten percent of the total rent due as additional rent.  The lease also included a utility addendum, which required defendant to pay a $28 monthly sewer charge.

Paragraph twenty-five of the lease addressed abatements and, in pertinent part, provided:

> You must promptly notify us in writing of:  water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose

---

[1]  Defendant Marie Monteil-Sabree was dismissed from this case in October 2025 and did not participate in this appeal.

A-0802-25

a hazard to property, health, or safety. . . . Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. <u>Rent will not abate in whole or in part.</u>

[(Emphasis added).]

Prior to moving out, the lease required defendant to "thoroughly clean the apartment," or otherwise be subject to "reasonable cleaning charges." The lease stated defendant was also liable for the following charges upon moving:

unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, . . . scratches, tears, burns, stains, or unapproved holes; . . . repairs or cleaning; . . . late-payment and returned-check charges; a charge (not to exceed $100) for [plaintiff's] time and inconvenience in any valid eviction proceeding against [defendant], plus attorney's fees[,] costs, and filing fees actually paid; and other sums due under this [l]ease . . . .

Additionally, paragraph thirty-one, which governed default, provided, in pertinent part:

If you default and move out early, you will pay us any amounts stated to be owed[,] including rent, additional rent[,] and damages. Upon your default, we have all other legal remedies, including [l]ease . . . termination. You are responsible for all rent and fees under the [l]ease . . . until the termination of the [l]ease . . . , or until the unit is re-rented. You shall also pay all

3

attorney['s] fees and filing costs. Attorney['s] fees and filing costs shall be considered as additional rent.

IF THE TENANT IS SUCCESSFUL IN ANY ACTION OR SUMMARY PROCEEDING ARISING OUT OF THIS LEASE, THE TENANT SHALL RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH[,] FROM THE LANDLORD TO THE SAME EXTENT THE LANDLORD IS ENTITLED TO RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH[,] AS PROVIDED IN THIS LEASE.

[(Boldface omitted).]

A supplemental provision of the lease stated:

[S]hould [r]ent not be paid by the [six]th of the month, a court action may be instituted and [r]esident will be responsible for all legal costs incurred. Any such [a]ttorney's fees and court costs shall be due and payable as additional [r]ent. . . . In the event such proceeding is started, [r]esident agrees to pay [a] $135[] attorney fee, [a] $9[] pre-litigation letter[ fee], [a] $58[] court cost for [one] person [and] $5[] for each additional person, [and a] $43[] warrant of removal cost for all fees incurred with this proceeding for nonpayment of rent. These fees are to be part of any rent due and owing. Resident is responsible for any and all legal fees and court costs for any court proceeding[,] which shall be due as additional rent.

[(Emphasis added).]

After defendant fell behind on rent, plaintiff filed a landlord-tenant action, seeking a judgment of possession based on defendant's non-payment. On

4

September 10, 2024, the court granted plaintiff a warrant of removal, with a lock-out date of September 18.

In May 2025, plaintiff filed a complaint, seeking judgment against defendant in the amount of $6,543.06 plus attorney's fees and costs, representing unpaid back rent, late fees, utility charges, and court costs from the landlord-tenant matter. Defendant subsequently filed an answer and counterclaim, asserting a breach of the covenant of habitability due to inadequate air conditioning. He sought $17,196, representing rent paid over the summer months from 2021 through 2024. Prior to trial, plaintiff filed a certification in support of attorney's fees and costs, seeking an additional $3,095, which included fees for responding to defendant's counterclaim, trial preparation, and attendance at trial.

On September 30, 2025, the court held a bench trial, at which plaintiff was represented by counsel, and defendant was self-represented. Plaintiff's property manager testified regarding the terms of the lease, outstanding rent, a $28 monthly sewer charge defendant owed for August and September, the damages assessed after defendant vacated the apartment, and the legal fees and costs incurred in connection with the eviction and collection actions. Defendant testified regarding his tenancy, the alleged air conditioning issues during the

5

summer months, and his communications with management about the problem. He explained the heat was "unbearable," causing him to "have to sleep downstairs" where "the temperature was [eighty-five] degrees with the air conditioning running all day and . . . night." The parties introduced into evidence the lease agreement, an account ledger, a move-in/move-out condition report, the warrant of removal, and an HVAC service invoice.

The court found it was undisputed defendant owed two months' rent at the time of the September 2024 eviction, totaling $3,066 for August's and September's rent. It further found defendant owed a balance of $704.66 as of July 2024. The court determined plaintiff was entitled to the legal fees and costs it sought related to the eviction, bringing the total amount defendant owed plaintiff to $4,258.06.

However, the court found plaintiff was not entitled to recover its attorney's fees related to the civil collection action before it, reasoning paragraph thirty-one of the lease only allowed recovery of attorney's fees and costs related to the eviction matter, which the court had already addressed. The court further reasoned, "from a fairness standpoint, arguably[,] the legal fees were . . . almost . . . half of the entire amount of damages [plaintiff] claimed."

A-0802-25

The court also determined plaintiff was not entitled to recover any alleged damage defendant caused to the property. It reasoned plaintiff had not presented satisfactory proof of the alleged damage, such as photos depicting the alleged damage was "something above and beyond normal wear and tear," given defendant had rented the property since 2020. The court further noted plaintiff had not presented evidence showing it had to clean the apartment "over and above what [it would] have [had] to do anyhow" to prepare "the premises for the next tenant."

As to defendant's counterclaim, the court found he made "numerous complaints" to plaintiff about the property being too hot during the summers at issue, which led to an HVAC company being retained in August 2023 to assess the issue, crediting an invoice presented during the trial. It noted the invoice stated defendant complained of "a lack of airflow going to the loft," where his bedroom was located, which was "a common problem" in that building's units, and the airflow issue resulted from "no return in the loft[,] . . . so the heat just rises[,] and it gets trapped up there." The court also credited defendant's and the property manager's testimony regarding the "ongoing problem," which had made the bedroom "uncomfortable to the point of being impossible to sleep up there

A-0802-25

because of the heat."  However, it noted neither party had offered proof of the property's exact temperature during those summers.

The court found defendant sought "essentially a set off" against the outstanding rent owed to plaintiff, such that the lease's non-abatement clause did not apply under the presented facts.  It explained:

> [A]n argument could [be] made . . . the [c]ourt is . . . playing with the words [of] paragraph [twenty-five of] the lease[, which] says rent will not abate in whole or in part due to air conditioning problems. . . . So[,] whether [']rent abatement['] and [']set off['] [are] the . . . same thing or . . . different thing[s], [the court] do[es]n't know, but . . . even with that language in there, and even . . . if you want to call a set off an abatement, the argument raised by . . . defendant is a good argument because[] . . . if that happens once or twice, there won't be a rent abatement.
>
> But really[,] . . . it happened throughout the summer months for four years . . . .  So[,] that sort of . . . makes paragraph [twenty-five] with regard to no rent abatement somewhat unconscionable, . . . in practice.  In other words, especially when you have this [HVAC invoice] . . . saying that it's a[n] ongoing[,] common problem and it essentially can't be remedied, . . . [the court] do[es]n't know whe[ther] that clause would be . . . equitable, fair[,] or enforceable.

Although the court found defendant's argument he should receive a "set off of the entire rent for the three months . . . [of] each summer for four years" unpersuasive, it determined a set off was "appropriate."  It reasoned while the

8

A-0802-25

apartment "was livable" and defendant had remained in the property, the rising heat made it "uncomfortable," causing defendant to sleep on the sofa downstairs.

Accordingly, the court determined defendant was entitled to a $1,325.28 "set off" for plaintiff's failure to remedy the issue over four years, representing two percent of the total rent due under the parties' lease from January 2021 to December 2024, pursuant to the billing statements, which totaled $66,264.[2] After subtracting the $1,325.28 "set off" from the $4,258.06 damages calculation, it found plaintiff, as the prevailing party, was entitled to the filing fee and entered judgment in favor of plaintiff for $3,032.26. The court did not specifically address the late fees or utility charges plaintiff had requested.

## II.

A trial court's factual findings made following a bench trial are accorded deference and will be left undisturbed so long as they are supported by substantial credible evidence. See Reilly v. Weiss, 406 N.J. Super. 71, 77 (App. Div. 2009) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974)). On the other hand, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any

---

[2] The court stated $66,264 "was the total price . . . [defendant] . . . paid for the four years" from January 2021 to December 2024, however, defendant had vacated the premises in September 2024 following the warrant of removal.

A-0802-25

special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

New Jersey courts "have shown an increasing tendency to analogize landlord-tenant law to conventional doctrines of contract law." McGuire v. City of Jersey City, 125 N.J. 310, 321 (1991). "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 492 (App. Div. 1991).

"Generally, the terms of an agreement are to be given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002). "[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction[,] and the courts must enforce those terms as written." Karl's Sales, 249 N.J. Super. at 493. "The court has no right 'to rewrite the contract . . . .'" Ibid. (quoting Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987)).

A.

Plaintiff argues the court failed to enforce the lease as written and disregarded its plain terms regarding late fees, sewer charges, and property

A-0802-25

damage. It emphasizes the lease expressly provided for $153.30 per month in late charges and $28 per month in sewer charges, and defendant made no payments after July 2024. Thus, plaintiff contends the court erred in not including an additional $362.60 in the judgment, representing the late fees and sewer fees defendant owed for August and September 2024. Additionally, the judgment should have included an additional $870 worth of property damage and cleaning charges listed in the move-out report submitted to the court, which were expressly provided for in the lease. Plaintiff further claims defendant presented no evidence warranting the exclusion of such charges.

Although the court noted plaintiff sought damages related to late fees and utility charges at the outset of its ruling, it did not make any findings as to plaintiff's entitlement to those damages. Given the lease clearly provides for the recovery of late fees and utility charges, which the court recognized, we remand the matter for the court to add those fees to the judgment.

However, we affirm the trial court's determination plaintiff was not entitled to an award for the alleged property damage. The record supports the finding plaintiff failed to present sufficient proof the damage was "something above and beyond normal wear and tear" or evidence showing it had to clean the apartment "over and above what [it would] have [had] to do anyhow" to prepare

11

the premises for the next tenant.  See Reilly, 406 N.J. Super. at 77.  Plaintiff presented no pictures of the alleged damage and instead only presented its own report of the property's alleged condition and its assessed value of the corresponding charges to repair and clean the unit.  It asserts defendant "did not provide any evidence that such cleaning and repairs were not required to be performed."  However, defendant did not have the burden of proof.  Given the deference accorded to the trial court's factual and credibility findings, we discern no basis to disturb its ruling on the alleged damage to the property.

B.

Plaintiff argues the court erred in awarding defendant a rent abatement based on the alleged air conditioning issue, emphasizing the lease expressly stated rent would not abate for such an issue.  It asserts defendant provided no evidence he requested his unit be repaired, highlighting the lease's requirement he provide notice if his air conditioner was malfunctioning.  It also contends there was insufficient evidence to find the apartment was uninhabitable, as defendant could not identify a single day on which the apartment was too hot.  Moreover, plaintiff argues the court arbitrarily set the rent abatement award at two percent of the total rent from January 2021 to December 2024, even though

12

defendant only claimed to have experienced issues with the air conditioning during the summer months and did not pay rent after July 2024.

A trial court's determination regarding rent abatement "is a factual finding and will be affirmed if supported by credible evidence in th[e] record." C. F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 596 (App. Div. 1980). In Marini v. Ireland, 56 N.J. 130, 144 (1970), our Supreme Court held all residential leases contain an implied covenant or warranty of habitability. A landlord's covenant of habitability and a tenant's covenant to pay rent are mutually dependent on one another. Berzito v. Gambino, 63 N.J. 460, 469 (1973). "Accordingly[,] in an action by a landlord for unpaid rent[,] a tenant may plead, by way of defense and set off, a breach by the landlord of his continuing obligation to maintain an adequate standard of habitability." Ibid. The tenant must show "[t]he condition complained of must be such as truly to render the premises uninhabitable in the eyes of a reasonable person." Ibid. "At a minimum, the necessities of a habitable residence include sufficient heat and ventilation, adequate light, plumbing and sanitation[,] and proper security and maintenance." Trentacost v. Brussel, 82 N.J. 214, 225 (1980). However, a tenant must also provide their landlord with notice and reasonable time to effectuate repairs. Berzito, 63 N.J. at 469.

13

Contrary to plaintiff's argument defendant provided no notice of the alleged problems with the air conditioning, the record supports the court's finding defendant made "numerous complaints" to plaintiff about the property being too hot during the summer. Defendant testified he placed service requests for his air conditioning unit, and plaintiff repeatedly told him it would "look into it." Plaintiff's property manager also testified there were "several work orders" related to defendant's air conditioner. Additionally, the HVAC invoice corroborated defendant's complaints, as it noted defendant complained of "a lack of airflow going to the loft." Thus, the record shows defendant put plaintiff on notice of the issue.

Additionally, there was sufficient evidence for the court to find the property's "ongoing" airflow issue made defendant's bedroom "uncomfortable to the point of being impossible to sleep up there because of the heat," even in the absence of testimony as to specific days on which the property was too hot. Defendant testified the heat was "unbearable" during the summer, causing him to "have to sleep downstairs" often where "the temperature was [eighty-five] degrees with the air conditioning running all day and . . . night."

Moreover, as to plaintiff's argument regarding the lease's non-abatement language, the court acknowledged the clause but found it "somewhat

14

unconscionable . . . in practice," as the airflow issue was an ongoing problem that could not be remedied. Plaintiff does not challenge the court's unconscionability finding or point to any case law concerning the enforceability of such a provision. We also note the lease's non-abatement language, taken in the context of the entire clause, not only applies to a malfunctioning air conditioning unit but also applies to other issues, such as water leaks and electrical problems. The clause also notes plaintiff will "act with customary diligence to make repairs and reconnections" prior to stating "[r]ent will not abate." We discern no error in the court's ruling, as the rent abatement provision runs counter to the remedies afforded to tenants in New Jersey for habitability breaches and improperly stripped defendant of a core remedy while preserving plaintiff's right to collect rent.

We conclude the court reasonably exercised its discretion to award defendant a modest offset of the rent owed. It recognized the problems with the air conditioner occurred during the summer months but appears to have utilized a formula spread across the entire lease to help calculate the abatement. While the methodology may have been somewhat unorthodox, we discern no error in the court's calculation of the final abatement figure, except as noted below.

15

The court calculated the abatement based on "the total price . . . [defendant] . . . paid for the four years" from January 2021 to December 2024. However, defendant vacated the premises in September 2024, following the warrant of removal. We are therefore constrained to remand the matter to the trial court to calculate damages consistent with the time period during which defendant lived in the unit.

C.

Plaintiff further argues the court erred in finding the lease did not provide for attorney's fees in connection with a civil action for damages. It contends that finding is contrary to the lease's unambiguous terms, which it claims expressly provided for fee-shifting in "any court proceeding." (Emphasis and boldface omitted). Plaintiff further asserts the court's dissuasion from awarding attorney's fees because they totaled approximately thirty percent of the amounts claimed is not a basis to deny recovery, because "there need not be proportionality between the damages recovered and the attorney['s ]fee[s] award[ed]." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 23 (2004). Given the court awarded plaintiff $100 in filing fees, plaintiff argues it should have similarly found it had the same authority to award it attorney's fees as the prevailing party.

16

A-0802-25

We conclude the court erred in finding the lease required the parties to be responsible for their own attorney's fees for the civil matter. Although the court found paragraph thirty-one of the lease only allowed an award of attorney's fees related to an eviction matter and not a civil matter, another provision of the lease specifically stated defendant "is responsible for any and all legal fees and court costs for any court proceeding which shall be due as additional rent." For these reasons, we remand the matter to the trial court for a calculation of attorney's fees and costs consistent with the plain language of the lease.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division

17